# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# YOUNGSTOWN

| | |
|---|---|
| **MATTHEW PEARSON,** *et al.*, | Case No. 4:22-cv-01393-BYP |
| Plaintiffs | JUDGE BENITA Y. PEARSON |
| v. | **PLAINTIFFS' ANSWER TO DEFENDANT FINANCES MADE SIMPLE, LLC'S COUNTERCLAIMS** |
| **ANTHONY AMATORE,** *et al.*, | |
| Defendants. | |

## ANSWER

For their answer to the Defendant Finances Made Simple, LLC ("FMS") Counterclaims [Doc. 18], Plaintiffs Matthew Pearson ("Mr. Pearson"), individually and derivatively on behalf of Tax Strategy Pro, LLC ("TSP"), Jacqueline Gibbons-McIntosh ("Mrs. McIntosh"), and RE-MMAP Inc. ("RE-MMAP") (collectively, "Plaintiffs"), state:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action and these claims and venue is proper per the Parties' Stipulation filed with the Court on August 15, 2022.

**RESPONSE:** Plaintiffs admit that this Court has jurisdiction over this lawsuit.

## FACTUAL BACKGROUND

2. Finances Made Simple, LLC (FMS) is owned and operated by Jon LaCasse ("Mr. LaCasse") organized as a Minnesota company on October 3, 2011 (See Minnesota Business Filing Details for FMS attached hereto as Exhibit 1).

**RESPONSE:** Plaintiffs admit that FMS is owned and operated by Mr. LaCasse. Plaintiffs are without information sufficient to admit or deny the remaining allegations of this paragraph and therefore denies them.

3. FMS is an existing company in the insurance and financial services industry, appointed with dozens of insurance carriers and which at all times prior to, during, and presently, maintains those businesses independently of TSP and which existed before TSP (https://financesmadesimple.net/).

**RESPONSE:** Plaintiffs are without information sufficient to admit or deny the allegations of this paragraph and therefore denies them.

4. In January 2019, FMS started providing back-office support for American Incentive Advisors ("AIA") collecting documents and performing ongoing service work to allow AIA to identify Research & Development tax credits to business owners.

**RESPONSE:** Plaintiffs are without information sufficient to admit or deny the allegations of this paragraph and therefore denies them.

5. FMS recruited and trained more than 100 independent insurance agents for the R&D opportunity, for which FMS generated significant revenue.

**RESPONSE:** Plaintiffs are without information sufficient to admit or deny the allegations of this paragraph and therefore denies them.

6. In the spring of 2021, Mr. LaCasse was introduced to Matthew Pearson ("Mr. Pearson") for the purpose of engaging Tax Strategy Pro for FMS's and his personal proactive tax planning.

**RESPONSE:** Plaintiffs admit the allegations of this paragraph.

7. Mr. Pearson asked Mr. LaCasse and FMS to train and educate agents and clients on how the R&D credit worked.

**RESPONSE:** Mr. Pearson denies the allegations of this paragraph.

8. Mr. Pearson was also appointed with AIA; he wanted to "White Label" the R&D opportunity as TSP, but with the business actually completed by AIA; the agents were dually appointed with TSP & AIA.

**RESPONSE:** Mr. Pearson denies the allegations of this paragraph.

9. TSP and FMS executed a Referral Fee Agreement ("Agreement") for compensation when FMS's agents refer business to TSP (see Exh. B to Complaint incorporated by reference herein).

**RESPONSE:** Mr. Pearson and TSP admit that TSP and FMS entered into a Referral Fee Agreement and that the Referral Fee Agreement speaks for itself. Mr. Pearson and TSP deny any allegations contrary to the terms of the Referral Fee Agreement. Mr. Pearson and TSP deny the remaining allegations contained in this paragraph.

10. No agreement exists between FSM and TSP relating to ownership or control of FMS agents, which FMS owns and controls at all times. See Agreement, WHEREAS # 2, acknowledging Referrer's "contacts within the Business Industry" later referred to as "potential prospects" to become "customers" in WHEREAS #3.

**RESPONSE:** Mr. Pearson and TSP admit that TSP and FMS entered into a Referral Fee Agreement and that the Referral Fee Agreement speaks for itself. Mr. Pearson and TSP deny any allegations contrary to the terms of the Referral Fee Agreement. Mr. Pearson and TSP deny the remaining allegations contained in this paragraph.

11. Mr. Pearson represented to FMS and Mr. LaCasse that FMS owned its agent relationships.

**RESPONSE:** Mr. Pearson denies the allegations of this paragraph.

12. Based on Mr. Pearson's representations, FMS introduced existing business clients and its broad network of agent relationships to TSP with the intent of doing proactive tax planning for FMS's clients and the clients of FMS's existing agents.

**RESPONSE:** Plaintiffs are without information sufficient to admit or deny the allegations of this paragraph and therefore denies them.

13. TSP results were disastrous; they failed to deliver tax plans due to not having any sort of process or system in place.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

14. The Employee Retention Tax credit program ("ERTC") was launched by Congress in the 2nd quarter of 2020. FMS's agents started submitting business with AIA for the ERTC credit.

**RESPONSE:** Mr. Pearson and TSP admit the ERTC was launched by Congress in 2020. Plaintiffs are without information sufficient to admit or deny the remaining allegations of this paragraph and therefore denies them.

15. During the summer of 2021, after Mr. Pearson learned how successful FMS was in this area, on behalf of TSP, he promised things had improved at TSP and that if FMS would submit the signed applications, TSP would do all of the ERTC data collection and back-office work.

**RESPONSE:** Mr. Pearson denies the allegations of this paragraph.

16. Trusting and relying on Mr. Pearson's representations, FMS authorized its agents to start moving the ERTC business to TSP.

**RESPONSE:** Plaintiffs are without information sufficient to admit or deny the allegations of this paragraph and therefore denies them.

17. Mr. Pearson's promises were false as TSP simply did not complete the work. With FMS's and Mr. LaCasse's reputations now at stake, FMS implored Mr. Pearson to take action to address TSP's processing issues.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

18. Mr. Pearson, on behalf of TSP, asked FMS to take over the ERTC processing.

**RESPONSE:** Mr. Pearson denies the allegations of this paragraph.

19. FMS took over ERTC processing within the context of FMS's own internal operations, devoting its staff, time, and its own money to expand its back-office team and initiate a process that included development and implementation of technology, design, process, procedure, formula, compilations, methods, techniques and improvements, collectively "systems" which at all times have been owned and controlled by FMS.

**RESPONSE:** Plaintiffs are without information sufficient to admit or deny the allegations of this paragraph and therefore denies them.

20. FMS by and through Mr. LaCasse even created all of the marketing and client processing materials (see emails attached as hereto as Exhibits 2.a – 2.d).

**RESPONSE:** Plaintiffs are without information sufficient to admit or deny the allegations of this paragraph and therefore denies them.

5

21. Neither TSP nor Mr. Pearson personally ever contributed any time, labor or money to FMS in its development of its ERTC processes and systems, nor did FMS ever use any TSP technology, proprietary information or vendors. FMS owns the CRM system (Pipedrive) subscription. Neither TSP nor Mr. Pearson have any rights to FMS's subscriptions.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

22. Instead, FMS deployed its systems and technology to bail out TSP from its failure to meet its promises to FMS's clients, agents and contractors with whom FMS had preexisting relationships before Mr. LaCasse even met Mr. Pearson.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

23. The vast majority of top ERTC producers are FMS's agents.

**RESPONSE:** Plaintiffs are without information sufficient to admit or deny the allegations of this paragraph and therefore denies them.

24. FMS systems proved to be the panacea to TSP's woes. Not only was ERTC business processed efficiently, but due to the now successful program FMS created and implemented, TSP was able to accommodate an ever-increasing volume of ERTC business, from which TSP and Mr. Pearson substantially profited.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

25. Mr. Pearson planned an inner circle team meeting in Kentucky from May 16 through May 20, 2022, at which Mr. Pearson represented to the team that due to FMS's phenomenal success with the ERTC business, TSP was going to start using FMS to start processing TSP's tax planning.

**RESPONSE:** Mr. Pearson denies the allegations of this paragraph.

26. Terms of payment to FMS would be patterned after the parties' existing relationship and prior course of business.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

27. The schedule was made for Ian Grove ("Mr. Grove"), a TSP representative, to come to FMS's Hudson, WI office for FMS's team to train him on FMS's trade secret systems and processing. And for Mr. Grove, on behalf of TSP, to transition tax planning prospects into FMS's Pipedrive for implementation of FMS's systems and processing.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

28. After trusting and relying on Mr. Pearson's representations and expending time and resources to plan for this new line of business for FMS, Mr. Pearson without warning reneged on this promise and unilaterally terminated FMS involvement with TSP's tax planning processing.

**RESPONSE:** Mr. Pearson denies the allegations of this paragraph.

29. Next, Mr. Pearson informed TSP co-owner, Mr. Amatore, that he wanted to exploit what he learned from FMS's systems and processes and threatened to breach TSP's agreement with FMS to process the ERTC business.

**RESPONSE:** Mr. Pearson denies the allegations of this paragraph.

30. Mr. Pearson identified his plan to bring ERTC processing in-house at TSP and cut out FMS; TSP would move all ERTC and tax planning operations to Mr. Pearson's farm in Kentucky and pay staff $15.00 an hour to do this work because Jon LaCasse was too old, and already made his money.

**RESPONSE:** Mr. Pearson denies the allegations of this paragraph.

31. Mr. Pearson's unilateral actions have caused the current discord between the parties, and TSP remains in peril due to its failure to process and complete its tax planning commitments.

**RESPONSE:** Plaintiffs deny the allegations of this paragraph.

32. Mr. Pearson in July of 2022 called at least two of FMS's main producers, Pat Mancusco and Breck Churchill to solicit them away from FMS.

**RESPONSE:** Mr. Pearson denies the allegations of this paragraph.

33. Mr. Pearson conducted Zoom meetings and promoted a better ERTC processing system and enticed all of the attendees to schedule a one on one to have further discussions to lure them away from FMS.

**RESPONSE:** Mr. Pearson denies the allegations of this paragraph.

## COUNT ONE
## BREACH OF CONTRACT
*(Agreement to Process Tax Plans)*
(Mr. Pearson and TSP ("Counterclaim Defendants"))

34. **FMS** reasserts, realleges, and incorporates by reference the preceding paragraphs as though fully set forth herein.

**RESPONSE:** Plaintiffs repeats each and every response to the allegations in paragraphs 1 through 33 above as if fully set forth herein.

35. **FMS** and Counterclaim Defendants entered into a valid oral contract in which FMS agreed to provide tax planning processing services for Counterclaim Defendants.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

36. Counterclaim Defendants agreed to compensate FMS for its services.

8

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

37. **FMS** took prompt action to satisfy and fulfill its obligations under the contract.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

38. Counterclaim Defendants materially breached the contract by reneging on promises to have FMS process TSP's tax planning business.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

39. Counterclaim Defendants are in material breach of the contract because they never compensated FMS for its work to process TSP's tax planning business.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

40. FMS has incurred damages in an amount to be determined at trial due to Counterclaim Defendants breach for which Counterclaim Defendants are jointly and severally liable to FMS.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

**COUNT TWO**
**BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**
(*Agreement to Process Tax Plans*)
(Mr. Pearson and TSP ("Counterclaim Defendants"))

41. **FMS** reasserts, realleges, and incorporates by reference the preceding paragraphs as though fully set forth herein.

**RESPONSE:** Plaintiffs repeats each and every response to the allegations in paragraphs 1 through 40 above as if fully set forth herein.

42. Parties to an agreement have a duty to act in good faith.

9

**RESPONSE:** This paragraph states a legal conclusion to which no response is required. However, to the extent a response is required Mr. Pearson and TSP deny the allegations of this paragraph.

43. "Acting in good faith" means a person acts honestly in performing this part of the contract.

**RESPONSE:** This paragraph states a legal conclusion to which no response is required. However, to the extent a response is required Mr. Pearson and TSP deny the allegations of this paragraph.

44. Counterclaim Defendants reneged on their promise to engage FMS for tax planning processing after enjoying substantial profits from **FMS**'s processing of the ERTC business. Parties to an agreement have a duty to act in good faith.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

45. Counterclaim Defendants reason for the breach, that Mr. LaCasse is too old and has made his money, does not represent honesty in performing their end of the bargain.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

46. **FMS** incurred damages in an amount to be determined at trial due to Counterclaim Defendants breach for which Counterclaim Defendants are jointly and severally liable.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

# COUNT THREE
# PROMISSORY ESTOPPEL
(*Agreement to Process Tax Plans*)
(Mr. Pearson and TSP ("Counterclaim Defendants"))

47. **FMS** reasserts, realleges, and incorporates by reference the preceding paragraphs as though fully set forth herein.

**RESPONSE:** Plaintiffs repeats each and every response to the allegations in paragraphs 1 through 46 above as if fully set forth herein.

48. In the event it is determined **FMS**'s oral contract with Counterclaim Defendants is invalid, **FMS** asserts this claim for Promissory Estoppel in the alternative to Counts 1 and 2.

**RESPONSE:** This paragraph is a summary to which no response is required. To the extent a response is required, Mr. Pearson and TSP deny the allegations of this paragraph.

49. Mr. Pearson expressly engaged **FMS** for tax plan processing and sent Mr. Grove to **FMS**'s offices to begin implementation.

**RESPONSE:** Mr. Pearson denies the allegations of this paragraph.

50. **FMS** reasonably relied on Mr. Pearson's promises and expended time and resources on the implementation.

**RESPONSE:** Mr. Pearson denies the allegations of this paragraph.

51. Mr. Pearson reneged on his commitment and pledge to engage **FMS** to process tax plans.

**RESPONSE:** Mr. Pearson denies the allegations of this paragraph.

52. As a direct and proximate result of Mr. Pearson's breach of this promise, he has caused **FMS** to incur significant damages, not only for its expended time and resources in

beginning the implementation, but also to address the continued TSP tax plan processing completion failures that Mr. Pearson ignores.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

53. Therefore, Counterclaim Defendants are jointly and severally liable for FMS's compensatory damages in an amount to be determined at trial, and **FMS** requests this Court invoke its equitable powers to award **FMS** its attorneys' fees that Counterclaim Defendants have caused **FMS** to incur to address Counterclaim Defendants' breaches.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

**COUNT FOUR**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS**
(*Interference with FMS's agents*)
(Mr. Pearson and TSP ("Counterclaim Defendants"))

54. **FMS** reasserts, realleges, and incorporates by reference the preceding paragraphs as though fully set forth herein.

**RESPONSE:** Plaintiffs repeats each and every response to the allegations in paragraphs 1 through 53 above as if fully set forth herein.

55. **FMS** has business relationships of which Counterclaim Defendants are aware, and from whom Counterclaim Defendants have profited due to **FMS**'s agents referring clients to Counterclaim Defendants.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

56. Counterclaim Defendants acknowledged that **FMS** owns its agent relationships.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

57. Mr. Pearson in July of 2022 called at least two of **FMS**'s main producers, Pat Mancuso and Breck Churchill to solicit them away from **FMS**.

**RESPONSE:** Mr. Pearson denies the allegations of this paragraph.

58. Mr. Pearson conducted Zoom meetings and promoted a better ERTC processing system and enticed all of the attendees to schedule a one on one to have further discussions to lure them away from **FMS**.

**RESPONSE:** Mr. Pearson denies the allegations of this paragraph.

59. Counterclaim Defendants' actions represent their intentional interference with **FMS**'s long-standing business relationships that Counterclaim Defendants would not have known about but for **FMS**'s introduction to Counterclaim Defendants after Mr. Pearson acknowledged **FMS**'s ownership of those relationships.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

60. Counterclaim Defendants' actions were purposeful and taken to interfere with **FMS**'s business relationships for the purpose of damaging **FMS** and its business relationships.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

61. Counterclaim Defendants' actions have directly and proximately caused **FMS** to incur damages in an amount **FMS** will prove at trial and for which Counterclaim Defendants are jointly and severally liable.

**RESPONSE:** Mr. Pearson and TSP deny the allegations of this paragraph.

**PRAYER FOR RELIEF**

Plaintiffs deny that FMS is entitled to its request for judgment against Plaintiffs, and denies that FMS is entitled to its prayer for relief on pages 21 through 22 of its Counterclaims.

**AFFIRMATIVE DEFENSES**

Plaintiffs assert the following affirmative defenses:

FIRST AFFIRMATIVE DEFENSE

FMS's claims fail, in whole or in part, to state a cause of action.

SECOND AFFIRMATIVE DEFENSE

FMS's claims are barred, in whole or in part, because at all times Plaintiffs acted in good faith.

THIRD AFFIRMATIVE DEFENSE

FMS's claims are barred, in whole or in part, because it failed to mitigate its damages.

FOURTH AFFIRMATIVE DEFENSE

FMS's claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

FIFTH AFFIRMATIVE DEFENSE

FMS's claims for relief are barred, in whole or in part, by the equitable doctrines of unclean hands, estoppel, and laches.

SIXTH AFFIRMATIVE DEFENSE

FMS's claims are barred, in whole or in part, by the applicable statute of limitations.

SEVENTH AFFIRMATIVE DEFENSE

FMS's claims are barred, in whole or in part, by the applicable statute of frauds.

EIGHTH DEFENSE

FMS's claims are barred by waiver or release.

NINTH DEFENSE

FMS's claims are barred, in whole or in part, for the reasons stated in the Complaint.

**ADDITIONAL AFFIRMATIVE DEFENSES**

Plaintiffs reserve the right to amend its responses to add any additional defenses as additional facts become known to it, upon amendment of the underlying claims, or upon discovery of additional facts and information. As FMS's claims against Plaintiffs fail to state a cause of action and/or are barred, Plaintiffs are the prevailing party and therefore the Court should enter a judgment in its favor.

**WHEREFORE**, having fully answered the complaint herein, Plaintiffs prays the Counterclaims be dismissed with costs and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Aaron M. Herzig*
Aaron M. Herzig (0079371)
Jada M. Colon (0099048)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Phone: (513) 381-2838
Fax: (513) 381-0205
aherzig@taftlaw.com
jcolon@taftlaw.com

*Attorneys for Plaintiffs*

Of Counsel:

Matthew Seifert
Scioto Law, LLC
613 Chillicothe Street
Portsmouth, OH
Phone: (740) 357-9255
Matt@SciotoLaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2022 a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Aaron M. Herzig
Aaron M. Herzig